JOURNAL ENTRY and OPINION
Ed, defendants-appellants, appeal from Lyndhurst Municipal Court, Case No. 99-CVF-253, in which thileen Shane and municipal court found in favor of Alba Contractors, Inc., plaintiff-appellee, on its complaint for breach of contract. Having reviewed the record of the proceedings and the legal arguments presented by the parties, we affirm the decision of the municipal court.
This case arises out of a contract signed between appellants and appellee for the purpose of having the existing driveway, garage floor and two (2) sidewalk blocks removed and replaced at the residence of the appellants.[1] On July 11, 1998, Albert Sluga, the president of Alba Contractors, Inc., visited the appellants' residence and submitted a proposal to appellant Wadd, for the replacement of the driveway, garage floor, and sidewalk. The appellee provided appellant Wadd with an estimate for six thousand six hundred thirty-four dollars ($6,634) to perform the requested renovations. The estimate further provided for an initial payment of three hundred dollars ($300) upon execution, one-half of the balance upon the start of work and the balance upon completion. Appellant Wadd approved the proposal and signed the contract representing that he had the authority to do so on behalf of appellant Shane.[2]
Although the contract called for an initial payment of three hundred dollars ($300) at its inception, appellant Wadd testified that he did not have his checkbook at the time and would pay the appellee when they returned. Despite the fact that several weeks passed between the time that the appellants executed the agreement and appellee commenced work, appellants did not make any payments on the contract, but because of appellant Wadd's reassurances and a past relationship with the Sluga family, the appellee commenced work.
On August 24, 1999, the appellee drew a permit from the City of Richmond Heights to do this work and proceeded to remove the old concrete shortly thereafter. In accordance with local ordinances, the City of Richmond Heights performed a pre-pour inspection to verify that the area had been prepared in accordance with industry standard and the city code before the concrete was poured. The concrete was poured and the job was completed without any problems on or about August 31, 1999. Upon completion, the appellee, once again, requested payment, and again, appellant Wadd stated that the checkbook was unavailable and promised payment would be mailed.
After several days, an employee of the appellee phoned the appellants to inquire about the overdue payment, at which point appellant Wadd expressed concerns over the quality of the work.
The appellants called to the attention of the appellee, a series of alleged defects including poor drainage of the drive causing ponding of water, cracking, uneven surface of the apron, and a rough, unsmooth garage floor. At this point, appellants informed the appellee that they would make no payments for the work which was performed.
As a result of the appellants continued refusal to pay for the services performed, the appellee filed suit in the Lyndhurst Municipal Court asserting breach of contract. On April 6, 1999, the appellants filed an answer and counterclaim alleging unworkmanlike performance and generally denying appellee's allegations. Thereafter, on August 6, 1999, a bench trial was commenced before the magistrate.
At trial, both the appellants and appellee offered expert testimony in support of their case. The appellee offered the testimony of John DiFranco and appellant Sluga, both experienced concrete contractors who testified that the improvements were performed in a professional and workmanlike manner. The appellants offered the testimony of Anthony Carbone, a building inspector with the City of Cleveland Heights, Ohio, who testified that up to 90% of the improvements needed to be replaced. At the conclusion of evidence, and in light of the conflicting expert testimony, the presiding magistrate agreed to personally inspect the appellants' property and the alleged defects.
Thereafter, on September 17, 1999, the magistrate recommended judgment for appellee on its complaint. The magistrate's decision specifically found that the appellants did not sustain their burden of proof regarding alleged defects in the driveway, that the appellants offered no evidence of core sampling or other testing to indicate any weakness or defect in the concrete surface, and that the appellee performed its entire contract with the appellants in a workmanlike and professional manner. The appellants filed objections to the magistrate's decision with the trial court and, on December 2, 1999, the magistrate registered a nunc pro tunc decision granting judgment to the appellee. The magistrate in his nunc pro tunc decision specifically stated that the court found no sufficient evidence to support claims of defective workmanship by the contractor and, as such, the homeowner has no grounds for recovery. It is from this decision that the appellants now appeal.
The defendants-appellants' sole assignment of error states:
 I. THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE WEIGHT OF THE EVIDENCE.
The appellants argue in their assignment of error that the appellee failed in meeting its burden of proof that it furnished a driveway and garage floor completed in a professional, workmanlike manner with the implicit durability of a proper and fit installation and, as such, their complaint must fail. The appellants assert that the two hairline shrinkage cracks on the driveway, the garage floor smoothness, and the driveway drainage constitute a substantial defect in the implicit duty to perform in a workmanlike manner. The duty to perform in a workmanlike manner is imposed as a common law upon builders and contractors. Barton v. Ellis (1986), 34 Ohio App.3d 251, 252 (syllabus 1) citing Mitchen v. Johnson (1966), 7 Ohio St.2d 66 and Velotta v. Petronzio Landscaping, Inc. (1982), 69 Ohio St.2d 376
Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial. State ex rel. Squire v. City of Cleveland (1948), 150 Ohio St. 303, 345.
The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982),457 U.S. 31, where the Court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal; i.e., invocation of the double jeopardy clause as a bar to re-litigation. Id. at 43.
Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence.
 Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin, supra.
In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in State v. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442/64443, unreported, adopted the guidelines set forth in State v. Mattison (1985), 23 Ohio App.3d 10, syllabus. These factors, which this court noted are in no way exhaustive, include:
 1) Knowledge that even a reviewing court is not required to accept the incredible as true;
2) Whether evidence is uncontradicted;
3) Whether a witness was impeached;
4) Attention to what was not proved;
5) The certainty of the evidence;
6) The reliability of the evidence;
 7) The extent to which a witness may have a personal interest to advance or defend their testimony; and
 8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary.
In applying the above standard, there is no competent and credible evidence in the record to support the appellants' assignment. At trial, both the appellants and appellee offered conflicting expert testimony in support of their respective positions. The appellants offered the testimony of Anthony Carbone, a building inspector with the City of Cleveland Heights, Ohio, who stated that in varying degrees the work performed by the appellee was below industry standards. Likewise, the appellee offered the testimony of John DiFranco, a concrete contractor with several years of experience in the concrete industry, that the work performed by the appellee was within industry standards and the various imperfections were not unusual in this type of concrete work. Because of the conflicting testimony, and with consent of both parties, the magistrate personally inspected the driveway, garage, and sidewalk, and concluded that the work was performed up to industry standards. This court concedes that the magistrate is not an expert in concrete related construction, but nevertheless, this court presumes that the magistrate reviewing the entire record weighed the evidence and all reasonable inferences, considered the credibility of the witnesses, and correctly returned the verdict in favor of the appellee.
It is well settled that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279 (syllabus). The evidence introduced at trial as to the good and workmanlike quality of the driveway was competent and credible, moreover, the magistrate personally inspected the quality of the driveway, garage, and sidewalk. The evidence is uncontradicted that the appellee invested approximately four thousand five hundred dollars ($4,500) and considerable time and labor improving the appellants' driveway, garage, and sidewalk. Based on the appellants' course of conduct, it is clear that the appellants had no intention of paying for this job.
Accordingly, the defendants-appellants' assignment of error is not well taken.
It is ordered that appellee recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Lyndhurst Municipal Court to carry this judgment into execution.
 ______________________________ MICHAEL J. CORRIGAN, JUDGE
TIMOTHY E. McMONAGLE, P.J., and KENNETH A. ROCCO, J., CONCUR.
[1] Appellant Eileen Shane is the owner of property located at 343 Balmoral Drive in the City of Richmond Heights, Ohio. Appellant Wadd is appellant Shane's live-in fiance.
[2] It was stipulated both before and during trial that appellant Wadd had authority to enter into such agreement on behalf of appellant Shane.